```
          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ALABAMA
                   NORTHEASTERN DIVISION
```

FILED
02 APR -2 AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

MELISSA SUTTON and JIMMY E. BICE,  )
as heirs of CHARLES BICE, deceased, )
                                    )
     Plaintiffs,                    )
                                    )
v.                                  )   No. CV01-H-0443-NE
                                    )
JACOBS MANUFACTURING COMPANY,       )
INC.,                               )
                                    )
     Defendant.                     )

ENTERED
APR - 2 2002

## MEMORANDUM OF DECISION

The Court has before it the December 6, 2001 motion of Defendant Jacobs Manufacturing Company, Inc. ("Jacobs Inc.") for summary judgment. Pursuant to the Court's December 10, 2001 order, the motion was deemed submitted, without oral argument, on January 9, 2002.

### I.  PROCEDURAL HISTORY

Plaintiffs Melissa Sutton and Jimmy E. Bice, as heirs of Charles Bice, deceased, commenced this action on February 20, 2001 by filing a complaint in this Court stating a breach of fiduciary duty claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. (See Compl. ¶ 4, 13.) On December 6, 2001, Jacobs Inc. filed a motion for summary judgment asserting that Plaintiffs lacked appropriate standing



and eligibility to bring suit.[1]

Jacobs Inc. submitted evidence[2] and filed an initial and supplemental brief in support of its motion. Plaintiffs submitted evidence[3] and filed a opposing brief in opposition to the motion. Pursuant to this Court's December 10, 2001 order, the motion is now under consideration.

## II.   STANDARDS FOR EVALUATING A SUMMARY JUDGMENT MOTION

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322

---

[1] The gist of Jacobs Inc.'s "standing" argument simply entails the need to join what it considers to be indispensable parties. The complaint and the facts that support it, however, make such an examination unnecessary. This is not a policy-proceeds claim for a finite sum under a restrictive insurance policy. Rather, Plaintiffs' complaint entails a claim for equitable relief based on Jacobs Inc.'s alleged breach of fiduciary duty that effectively prevented Plaintiffs from having a plan to sue under. Thus, as will be shown infra, the threshold and determinative issue is a finding of fiduciary status on the part of Jacobs Inc.

[2] Jacobs Inc. submitted the depositions of Vicki Jacobs, Jimmy E. Bice and Melissa Sutton and the affidavits of Vicki Jacobs and John Hewgley.

[3] Plaintiffs submitted excerpts from the depositions of Jimmy E. Bice and Vicki Jacobs, in addition to certain documents produced in Defendant's initial disclosures. These disclosures included Charles Bice's COBRA application and an enrollment card from American Pioneer Life Insurance Company.

(1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears

the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact, i.e. facts that would entitle it to a directed verdict if not controverted at trial. See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a

simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III.   RELEVANT UNDISPUTED FACTS

Jacobs Inc. is a foundry providing health and life insurance benefits to its employees who meet the qualifications for coverage. See Vicki Jacobs Dep. 7. From 1997 until June 1, 2001, Jacobs Inc. contracted for health and life insurance coverage for its eligible employees[4] through Pacific Mutual Insurance Company

---

[4] To be eligible for insurance under Pacific's plan, an employee must have worked more than six months and have been a "full time permanent employee actively engaged in the conduct of

("Pacific").[5] See Vicki Jacobs Dep. 8. Jacobs Inc. assembled the names of participants, collected the monthly premiums and remitted them to Pacific. See Aff. of Vicki Jacobs 2. Vicki Jacobs ("Jacobs"), as office manager of Jacobs Inc., was the employee in charge of these ministerial duties. See Vicki Jacobs Dep. 5.

Charles Bice became covered by Pacific on January 1, 1997. See Aff. of Vicki Jacobs 4. Charles Bice carried this coverage until he left Jacobs Inc.'s employment on December 19, 1999 due to health problems, at which time he had term life coverage for $9,750. See id. at 4. He never returned. See id. Jacobs listed Charles Bice as an active employee for insurance purposes during his unemployment, but Pacific, upon learning of Charles Bice's inactive status around February or March 2000, required that he be placed on COBRA. See Vicki Jacobs Dep. 31. Charles Bice then began making COBRA payments to Jacobs Inc., who remitted them with the billing for the rest of the company. See id. at 33; 43-44. Unbeknownst to Jacobs or Charles Bice, he became ineligible for life insurance under Pacific's policy when he went on COBRA. See id. at 33-34. In March 2000, Jacobs Inc. received a document

---

the business of a subscribing employer[,] [w]orking at least 30 hours per week at the employer's regular place of business." See Vicki Jacobs Dep. Ex. 1.

[5] On June 1, 2001, Jacobs Inc. began providing its insurance through other providers. See Vicki Jacobs Dep. 8.

from Pacific indicating that Charles Bice was not covered under a life insurance policy. See id. at 34.

On June 1, 2001, Jacobs Inc. switched insurance providers. See Vicki Jacobs Dep. 8. Shortly after the transition, Plaintiff Melissa Sutton asked Jacobs if Charles Bice still had life insurance coverage under the changes. See id. at 36. Still unaware of COBRA's elimination of eligibility, Jacobs told her that he did. See id.

Charles Bice died July 3, 2000. See Jimmy E. Bice Dep. 8. Jimmy E. Bice took the death certificate to Jacobs and was told that he would be getting "something" from the life insurance company. See id. at 9. On September 5, 2000, Union Central Life Insurance Company, the life insurance provider at the time, sent a letter to Jimmy E. Bice stating that since his father never returned to "active work" as defined in its policy, Charles Bice had no death benefits available. See id. at Ex. 1. The letter went on to say that "review of the list of covered employees indicate[d] that [Charles Bice] was deleted, and no premiums were ever paid on his behalf." Id.

### IV. APPLICABLE SUBSTANTIVE LAW AND ANALYSIS

Plaintiffs claim that Jacobs Inc. breached its fiduciary duty, in violation of ERISA, by representing to Charles Bice that his $9,750 life insurance coverage would continue during his disability and by failing to inform him of his right to convert

the policy to individual coverage. Plaintiffs assert that Jacobs Inc. owed them a fiduciary duty because Pacific's sample materials list the subscribing employer as a plan administrator and because Jacobs Inc. regularly acted as a go-between when employees had questions concerning their coverage. See Pl.'s Br. in Opp'n. to Def.'s Mot. for Summ. J. 5.

ERISA provides that a "civil action may be brought by a participant or beneficiary . . . to recover benefits due . . . under the terms of [the] plan." 29 U.S.C. § 1132(a)(1)(B). These civil actions provide remedies for breach of fiduciary duties. See Hamilton v. Allen-Bradley Co., 244 F.3d 819, 825 (11th Cir. 2001); See also 29 U.S.C. § 1109(a). ERISA defines a fiduciary as someone who has discretionary authority or control respecting management of the plan or has any discretionary authority or responsibility over the administration of the plan. See 29 U.S.C. 1002(21)(A). In the 11th Circuit, this section also confers a right to sue the plan administrator for recovery of benefits. See id. at 824. The factual processes to determine a plan administrator and a fiduciary are identical. See Hamilton, 244 F.3d 826. Proof of who is a plan's administrator "may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." See Hamilton, 244 F.3d at 826 (citing Rosen v.

<u>TRW</u>, 979 F.2d 191, 193-94 (11th Cir. 1992)). If a fiduciary relationship exists, the fiduciary must provide "complete and accurate information in response to a participant's questions." <u>See</u> <u>id</u>. at 827.

In the present case, no evidence exists to conclude that Jacobs Inc. maintained any discretional authority over the administration of the plan. The undisputed evidence demonstrates that Jacobs Inc. established and sponsored the plan. While Pacific's sample documents list the subscribing employer as the plan's administrator, such a title is completely undermined by a complete lack of evidence in the record suggesting that Jacobs Inc. exerted any control whatsoever over the disposition or creation of Charles Bice's benefits. The evidence establishes only that Jacobs Inc. acted as a conduit between its employees and Pacific. Jacobs Inc. may have provided forms for its employees, provided Pacific with information on its employees, and even aided in getting employee questions answered by Pacific, but no evidence suggests that Jacobs Inc. ever had any power regarding Charles Bice's loss of life insurance upon entering COBRA or his failure to regain coverage under the new provider. In fact, the evidence suggests that Jacobs Inc. attempted to maintain Charles Bice as an active employee but was superseded by Pacific. Undoubtedly, Jacobs Inc. had broad authority over the ERISA plan - selecting Pacific, setting up the plan - but Jacobs

Inc. had delegated the responsibility for claim decisions to Pacific. While Vicki Jacobs was mistaken in her statement to Plaintiff Sutton, such an error does not create the discretion or administration necessary to establish an employer as a fiduciary for ERISA purposes. Absent evidence that Jacobs Inc. had some degree of decisional control over the plan then, Plaintiffs have no claim for breach of fiduciary duty against it.

In summary, the Court finds that no material issues of fact remain and that Defendant Jacobs Inc. is entitled to judgment as a matter of law as to all claims asserted by Plaintiffs. A separate order will be entered.

Done this 2nd day of April, 2002.

SENIOR UNITED STATES DISTRICT JUDGE